Pearson, J.,
dissentients. As is said in Allen’s case, (ante, 25Y,) decided at this term, where there is any evidence, however slight, which is competent and relevant as tending to prove the fact in issue, its sufficiency must be passed on by the jury. There is no difficulty in respect to the rule; but it is sometimes very difficult to make the application, as the distinction between no evidence, and evidence confessedly slight^ is a very nice one, and the dividing line can scarcely be traced. Like light and shade which run into each other,- so as to give rise to a difference of opinion as to whether a certain point is on the bright or the dark side of the line. This has occurred in the case under consideration; my brother Judges put it on the dark side; I am convinced that it should be put on the bright side. "When the case was first opened, I thought there could be no doubt about it; but finding there was a difference of opinion I have given to the matter mature reflection, and feel it to be my duty to dissent from the conclusion made by the other Judges.
It may be that the prisoner is guilty of onui-der. I do not feel it to be my duty to say, whether, according to the testimony and matter set forth in the statement of the case sent to this Court, I think the prisoner is, or is not, guilty of murder; but I do feel it my duty to say, J thmle his gmlt has not been established aocordmg to the law of the lemd; for I think there was some evidence tending to show that the homicide was committed under legal provocation, and if so, his guilt ought to have been established by the verdict of the jury, and not by the opinion of the Jndge. I think there was not only some evidence tending to show legal provocation, but that, taking the whole matter together, it presented a case peculiarly fit to be left to the good sense of the jury. I. There was no previous grudge; the parties being but slightly acquainted.’ The deceased called to see the prisoner upon ordinary business, and there is no suggestion of -a moti/ve for the commission of murder. So, at mqst, it is a case of constructive malice afore *277 thought, which is implied, under a harsh rule adopted by the Courts, ex necessitate, in the administration of the criminal law. 2. The prisoner did not strike the fatal blow while the deceased was lying- on the bed ; no blood is seen except at the place where he was lying on the floor; so, the deceased had got up from the bed. 8. There was a “lumbering- noise as of chairs;”—this tended to indicate that there was a mutual combat, or scuffle of some sort. 4. A voice is heard exclaiming “ O Lordy!” and another voice, “Damn you, shut your mouth or I’ll kill you !” The witnesses say the first voice was that of the deceased; the latter, the prisoner’s; but these .witnesses were at the house of Mr. Smithy, which, according to one witness, was distant three hundred yards; according to another, two hundred yards ; and according- to a third, a quarter of a mile. Was it not fit for the jury to inquire whether voices could be distinguished at that distance? and -whether the opinion of the witnesses in regard to the voices heard, should not be ascribed to the inferences which they formed from facts afterwards ascertained? This consideration was material; because a mistake as to the voice, changes the whole aspect of the case. 5. The first blow was a slight one with the hot shovel, on the face; so, the parties were then fronting each other, and we may assume, that as the deceased turned to retreat, the fatal blow -was given. 6. The prisoner makes no attempt to flee from justice, but makes an outcry for the witnesses, who find him with his coat off and his sleeves rolled up, and the shovel in his hand; the deceased lying on the floor with his head on the prisoner’s coat. If to these facts had been added a bruise, or even a scratch on the person of the prisoner, the chain of circumstances would have been complete to establish a legal provocation. So, there was only one Vmh in the chain missing. IIow can it be said that all the other links do not constitute some evidence fit to be taken into consideration by the jury? We may imagine the poor wretch, after ho came to himself, upon seeing the awful deed which he had committed, hesitating to criminate himself to the extent of manslaughter, and let it appear as a case of mu- *278 tual combat, or to attempt to excuse himself altogether, by resorting to artifice and falsehood, and asserting that the deceased had gone out of the house and there received the fatal blow. Foolishly, and most unfortunately for him, he adopted the latter course; hence, the vicious horse is hitched near the house, and is standing there an hour after dark, and the deceased is laid on the floor, with the prisoner’s “ good coat ” tenderly put under his head. Cod knows how the homicide occurred ; but the whole transaction has a mystery around it, which, in my opinion, it was the “ proper office and yirovince” of the jury to unravel, with the humane admonition of Lord Hale: Even innocent men will, when they find themselves in difficulty, sometimes resort to artifice and falsehood.” This is illustrated by the caso of the uncle, who, being charged with having murdered his niece, and finding appearances much against him, procured a girl who resembled his niece, to personate her, and presented her to the Court and jury as his niece. The artifice was detected, and the poor man was thereupon convicted and hung. Some time afterwards, the niece made her appearance, and the mystery was explained by the fact that she had run away to be married.
Besides feeling it to be my duty to dissent from the conclusion of my brother Judges, I also feel it to be my duty to protest against the manner in which, of late years, cases are made for this Court. Why insert circumstances of aggravation % It is the duty of this Court to confine its attention to the questions of law presented by the record. Any matters of fact not necessary to present those questions, but which are calculated to paint the offense in stronger colors of horror, so far from aiding our deliberations, tend to embarrass us, by imposing the additional duty of endeavoring to free ourselves from the prejudices which such irrelevant matter of fact necessarily creates. For instance, in this case, why set out the oaths and awful imprecations used by the prisoner after the commission of the offense % Why set out, that, according to the evidence, when sober, he was a peaceable man, but when drunk, frantic and a demon ? There was no allegation of ex *279 press malice. These matters were, in the opinion of the Judge, irrelevant, and not fit to be passed on by the jury; then, why set them out for the information of Judges who are to decide the questions of law ? Again, in Allen’s case, referred to above; according to the' opinion of the Judge, he was guilty of murder, upon the testimony, apart from, the idea of express malice ; then why was the case encumbered with the proof in regard to express malice 1 These two cases I refer to, merely because they are now in my mind ; but it may be proper'to say, my protest has no particular reference to the Judge before whom these cases were tried ; for I concur, with the profession, in regard to the very high estimate which is put upon his integrity and learning as a Judge.
Per Curiam,
Judgment affirmed.